UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTEFANIA DEL CARMEN VALLE OBANDO,<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, *et al.*,<br>Respondents. | Case No. 1:26-cv-07094 (EJD)<br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER**<br>Re: Dkt. No. 4 |

This matter is before the Court on Petitioner's Motion for a Temporary Restraining Order ("TRO") in which she argues that her August 14, 2026 bond hearing before an Immigration Judge ("IJ") did not comport with this Court's prior order granting her habeas relief, and additionally violated her due process rights. *See* Dkt. No. 4-1 at 6–7. To remedy this harm, she seeks both immediate release and an order requiring that Respondents transfer Petitioner's removal proceedings from the Adelanto Immigration Court to the San Francisco Immigration Court. *Id*. at 12. For the reasons that follow, the Court grants the TRO in part, and orders that Petitioner be released.

## I. BACKGROUND

This is Petitioner's second habeas petition before this Court. On August 3, 2026, the Court granted Petitioner's first petition and directed Respondent to provide her with a "*substantive* bond hearing withing fourteen (14) days, or a later date upon Petitioner's request." Dkt. No. 1-1 at 8 (emphasis in original). On August 4, 2026, Petitioner received notice that her hearing was scheduled for August 14, 2026. Dkt. No. 8 at 21. A day prior to the hearing being held, Petitioner's attorney filed a "Motion to Continue the Bond Hearing" by one week, arguing that she



United States District Court
Eastern District of California

United States District Court
Eastern District of California

required additional time to gather documentation and evidence in support of Petitioner's release. Dkt. No. 1-1 at 10–16. The IJ denied the Motion for a Continuance and proceeded with the hearing as scheduled. *See id*. at 20. Petitioner maintains that preparing for her immigration proceedings, generally, has been difficult for her and her attorney given that the detention facility where she is currently detained is hundreds of miles away from her counsel's office in Sacramento, California and her home in Union City, California. Dkt. No. 4-1 at 4.

The hearing proceeded as scheduled on August 14, 2026. At the outset of the hearing, the IJ indicated that the hearing was being conducted pursuant to this Court's order and that Respondents had the burden of demonstrating by clear and convincing evidence that Petitioner was a danger to the community or a flight risk. Dkt. No. 9 ("Hearing Recording"), 0:02:15–0:02:25. In support of its burden, the Government filed Petitioner's I-213 form and her RAP sheet showing that Petitioner was convicted for credit card fraud on June 29, 2025. *See* Dkt. No. 8 at 25–34. The IJ followed up with further questioning of Petitioner, asking her what year she entered the United States (Hearing Recording, 0:15:12), clarifying questions regarding her criminal record (*id*. at 0:15:13–0:18:12), details about her familial ties in the United States (*id*. at 0:18:13–0:18:52), and questions about her applications for immigration relief (*id*. at 0:18:53–0:22:52). Petitioner did not submit any documentary evidence, nor did either sides' attorneys elicit any testimony.

Based on the documents submitted by the Government and Petitioner's testimony—all of which was elicited by the IJ—the IJ found that the Government had met its burden that Petitioner was both a flight risk and danger to the community reasoning that Petitioner's conviction for a financial crime was a serious offense harming others and that the lack of both available relief from removal and familial ties in the United States demonstrated Petitioner would be flight risk if released. Hearing Record, 0:24:20–0:26:50. The IJ's written order issued on August 17, 2026 recites this same reasoning. Dkt. No. 1-1 at 17.

Petitioner appealed the IJ's order to the Board of Immigration Appeals ("BIA") on August 27, 2026. *See* Dkt. No. 4-6 This TRO followed.

## II. LEGAL STANDARD

The standards for issuing a TRO and preliminary injunction are identical. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[W]hen the Government is the opposing party," the final two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

#### 1. Exhaustion of Administrative Remedies

Before reaching the merits of a habeas petition challenging immigration detention, a district court ordinarily considers whether the petitioner has exhausted available administrative remedies. *See Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). In the habeas context, however, the exhaustion requirement "is prudential, rather than jurisdictional." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Because exhaustion is prudential, a court retains discretion to excuse it in appropriate circumstances.

Waiver of this requirement is appropriate here as the petition challenges the IJ's compliance with this Court's prior order, as well as alleged due process violations committed by the IJ, and not just his findings. The BIA, presumably, would not have the authority to consider whether the IJ abided by this Court's prior order or if the hearing itself was in accord with due process. Under these circumstances, waiver of the exhaustion requirement is proper. *See Vladimir v. Warden of the Golden State Annex Det. Facility*, No. 1:26-CV-03800-RLP, 2026 WL 2643075, at *2 (E.D. Cal. Sept. 8, 2026) (waiving exhaustion requirement where court was assessing

compliance with court's prior order).

### 2. The Court's Order and Due Process Violations (Counts 1, 3, 5)

The Court finds that Petitioner is likely to succeed on her claims that the IJ's refusal to continue the bond hearing so that she and her counsel could gather further evidence in support of release on bond violated the Court's August 3, 2026 order and due process. This Court has authority to ensure compliance with its order granting relief in habeas actions. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."); *Parajuli v. Warden, California City ICE Det. Facility,* No. 1:26-CV-03125-TLN CKD P, 2026 WL 1707076, at *3 (E.D. Cal. June 12, 2026), *report and recommendation adopted by* No. 1:26-CV-03125-TLN-CKD, 2026 WL 1833477 (E.D. Cal. June 25, 2026) ("[P]etitioner's right to a meaningful opportunity to put forward evidence as to whether he is eligible for release was compromised by insufficient notice of the ordered hearing and the IJ's failure to grant petitioner more time to remedy the lack of proper notice."). And Courts have found, in similar circumstances, failing to allow petitioners to continue court ordered bond hearings can amount to a due process violation. *See Hidalgo v. Warden, California City Det. Facility*, No. 1:26-CV-04755-DJC-SCR, 2026 WL 2547030, at *4–5 (E.D. Cal. Aug. 28, 2026) (ordering release where the Government failed to provide the petitioner with a constitutionally adequate hearing per the court's prior order). Prolonged detention without a constitutionally adequate hearing further supports a due process violation. *See Feng v. Lyons*, No. 1:26-CV-00235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (holding that "Petitioner's lengthy detention without the process afforded to him under 8 U.S.C. § 1226(a) warrants release" where "the Government intentionally chose to deny Petitioner the right to a bond hearing, and there is no indication before the Court of prima facie evidence that Petitioner could be found to be a risk of flight or a danger to the community).

Here, Petitioner has shown a likelihood of success on her claims that the IJ's refusal to grant a short continuance both violated this Court's order and inhibited her ability to effectively advocate for herself at the hearing. As a result, Petitioner has been detained for over four months

without constitutionally adequate process. The Court's prior order expressly directed the Government to provide Petitioner with "a *substantive* bond hearing within fourteen (14) days, ***or a later date upon Petitioner's request***[.]" Dkt. No. 1-1 at 8 (emphasis added). Allowing Petitioner to continue the hearing was not a suggestion, but rather a directive to the Government so to avoid the very situation that appears to have occurred here: because Petitioner was not allowed to continue her hearing, she and her attorney could not sufficiently gather evidence in support of her release on bond. Indeed, the Government submitted only two documents to meet their burden and did not elicit any testimony. Petitioner did not present any documentary evidence, nor was her attorney given the opportunity to elicit testimony; only the IJ questioned Petitioner. Accordingly, Petitioner has shown a likelihood of success as to counts 1, 3, and 5 of her habeas petition.

**3. Remaining Claims for Relief (Counts 2, 4)**

Aside from this issue, the Court finds that Petitioner has not shown a likelihood of success on her remaining claims. *See* Dkt. No. 1 ¶¶ 51–55. As to her claim challenging the IJ's findings, upon review of the recording of the hearing, it appears that the IJ applied the clear and convincing standard as ordered by the Court. If the immigration court "expressly cited and applied the relevant case law in rendering its decision," the Court should accept that it "applied the correct legal standard," unless there is an indication that "something is amiss." *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (cleaned up). What appears to be "amiss" here is not how the IJ weighed and considered the evidence, but the fact that Petitioner and her counsel were not provided with sufficient time to prepare and gather evidence to rebut the Government's showing.

Petitioner has also not shown a likelihood of success on her claim that she was "deprived of meaningful access to counsel before and during the bond hearing" given the remote location of her detention facility and inadequate attorney-client communication options. *See* Dkt. No. 1 ¶¶ 61–66. Though courts have found due process violations where immigration detention facilities denied immigration detainees access to counsel, the instant petition does not assert sufficient facts to rise to the level of a due process violation. *C.f. Innovation L. Lab v. Nielsen*, 342 F. Supp. 3d 1067, 1080 (D. Or. 2018) (finding likelihood of success on due process claim where attorneys

were denied access to detained noncitizens by detention facility and given conflicting information regarding visitation hours). Petitioner supports her claim solely on the grounds that her detention facility is too remote for in-person legal appointments to be practical, and that video appointments are "inadequate." Dkt. No. 1 ¶¶ 23–24, 38. She has not, however, identified any facts as to why video appointments are insufficient or have effectively denied her access to counsel. On this record then, Petitioner has not shown a likelihood of success on her access to counsel claim.

**B. Remaining *Winter* Factors**

Petitioner has demonstrated that the remaining *Winter* factors tilt sharply in her favor. As to the second *Winter* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). As to the third and fourth *Winter* factors, which merge in this case against the Government, "[t]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 25-CV-05071-BLF, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

**C. Remedy**

The Court finds that the appropriate remedy is immediate release. "Upon determining that an IJ provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release [ ] or ordered that Respondents provide petitioner with a new constitutionally adequate bond hearing." *Perez Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *7 (S.D. Cal. Apr. 16, 2026) (collecting cases). The hearing provided to petitioner on [August 14, 2026], was not in accord with the Court's August 3, 2026, order. As such, the finding that Petitioner is a danger to the community and flight risk sufficient to deny petitioner release cannot stand as she was not afforded an opportunity to challenge any evidence presented by the Government. *Parajuli*, 2026 WL 1707076, at *3; *Hidalgo*, 2026 WL 2547030, at *4–5; *Rodriguez Bustillo v. Andrews*, No. 1:26-CV-05737-DJC-AC, 2026 WL 2225717, at *1 (E.D. Cal. Aug. 3, 2026) (explaining that a delay in providing a

bond hearing "violates Petitioner's due process rights and justifies release.").

The Court, however, declines to order Respondents to transfer Petitioner's removal proceedings from the Adelanto Immigration Court to the San Francisco Immigration Court. Petitioner has presented no authority that this is an appropriate remedy in habeas, and the Court is aware of none.

**D. Bond**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* Because the Court perceives no prejudice to Respondents resulting from granting the TRO, the Court finds it appropriate to issue relief without requiring security.

**IV. CONCLUSION AND ORDER**

For the foregoing reasons, Petitioner's TRO is granted in part. Respondents are ordered to immediately release Petitioner from custody. Respondents shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing. Respondents shall not re-arrest or re-detain Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change of circumstances necessitating Petitioner's arrest and detention, and a timely hearing. At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have their counsel present.

Respondents are ordered to show cause, in writing, why a preliminary injunction should

not issue as to counts 1, 3, and 5 by September 29, 2026. Petitioner may file a reply by October 1, 2026. The parties' responses should indicate to whether they object to the Court ruling on the underlying petition.

**IT IS SO ORDERED.**

Dated: September 22, 2026

EDWARD J. DAVILA
United States District Judge